ROBERT C. SCHUBERT (S.B.N. 62684)
WILLEM F. JONCKHEER (S.B.N. 178748)
NOAH M. SCHUBERT (S.B.N. 278696)
SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
Telephone:     (415) 788-4220
Facsimile:      (415) 788-0161
rschubert@sjk.law
wjonckheer@sjk.law
nschubert@sjk.law

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS REYNA, Individually and on Behalf of All Others Similarly Situated, | **No.** |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | Jury Trial Demanded |
| ARRIS INTERNATIONAL plc, | |
| Defendant. | |

Upon personal knowledge as to his own acts, and based upon his investigation, his counsel's investigation, and information and belief as to all other matters, Plaintiff Carlos Reyna ("Plaintiff"), on behalf of himself and all others similarly situated, alleges:

## I. INTRODUCTION

1. This is a class action brought on behalf of purchasers of the SURFboard SB6190 cable modem (the "Modem") sold by Defendant Arris International plc ("Arris"). A cable modem is a device that allows cable subscribers to connect to broadband Internet service.

2. As alleged herein, since its launch in late 2015, Arris marketed the Modem as a high-end cable modem delivering "the fastest speeds and most reliable connection to the Internet." However, Arris failed to disclose that the Modem contains a serious defect that prevents it from operating properly. News reports and customer complaints since the release of the Modem indicate that it suffers from high spikes in network latency—delays in data communication over the network—that degrades users' Internet connectivity.

3. Plaintiff purchased a Modem for personal use and suffered network latency, an experience shared by many purchasers of the Modem. Despite this widespread defect, Arris has not announced a recall of the affected model, or otherwise offered to repair or replace it.

4. By shipping Modems with this defect, Arris sold consumer goods that were substantially below the quality generally available in the market, were not fit for the for the Internet connectivity for which they were generally used, and were not adequately packaged and labeled. Arris, therefore, has breached its implied warranty of merchantability in violation of the California Song-Beverly Consumer Warranty Act, CAL. CIV. CODE §§ 1790 *et seq.* As a result, all purchasers of the Modem that contained the defect are entitled to recover monetary damages for the full purchase price of their cable modems.

5. Arris also concealed the network latency problem with the Modem through its marketing, advertising, and packaging of the product. Arris' misrepresentations and omissions violate the California Consumer Legal Remedies Act ("CLRA"), CAL. CIV. CODE §§ 1750 *et seq.*, and the California False Advertising Law ("FAL"), CAL. BUS. & PROF. CODE §§ 17500 *et*

*seq.* Arris's conduct is also unlawful, fraudulent, and unfair in violation of the California Unfair Competition Law ("UCL"), CAL. BUS. & PROF. §§ 17200 *et seq.*

## II.     PARTIES

6.     Plaintiff Carlos Reyna is a citizen of California. In 2016, Plaintiff purchased a Modem online through Amazon.com.

7.     Defendant Arris is a corporation organized under the laws of England and Wales and maintains its headquarters at 3871 Lakefield Drive, Suwanee, Georgia 30024. Defendant Arris is a citizen of Georgia. In its public statements, Arris describes itself as a "world leader in entertainment and communications technology" and states that it provides "hardware, software, and services across the cloud, network, and home to power TV and Internet for millions of people around the globe." Arris operates two business segments: Customer Premises Equipment and Network & Cloud. Arris provides equipment and technology, including cable modems, that is used by service providers to deliver media, voice, and data services to their subscribers.

## III.     JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because there are more than 100 proposed Class Members, some members of the proposed class and the Defendant are citizens of different states, and the amount in controversy exceeds $5 million.

9.     This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts with California such that the exercise of jurisdiction by this Court over Defendant is consistent with notions of fair play and substantial justice. A substantial portion of the wrongdoing alleged in this Complaint took place in California; Defendant conducts business in California and otherwise avails itself of the protections and benefits of California law through the promotion, marketing, and sale of its Modems in the State; and this action arises out of or relates to these contacts.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant maintains an office in this District, a substantial part of the events or omissions giving rise to the claims occurred in this District, and a substantial part of the property that is the subject of the action is situated in this District.

## IV. SUBSTANTIVE ALLEGATIONS

### A. The Cable Modem Market.

11. A cable modem is a device that enables a computer to transmit data over a coaxial cable line. The cable modem is located at the cable subscriber's home, and connects to the cable network to receive and transmit digital information between subscriber-owned devices (such as desktop PCs or routers) and the service provider's headend or central office, providing Internet connectivity for data and/or voice services.

12. Cable subscribers generally obtain their cable modem for Internet connectivity in one of two ways – they either rent a cable modem that is owned by their cable service provider (for example, Comcast), or they purchase the cable modem at retail. Arris is one of several manufacturers of cable modem hardware and related equipment for service providers and consumers. Other large competitors include Cisco Systems, Inc. and Netgear, Inc.

13. As of 2016, the cable subscriber base in the United States was approximately 50 million. Due to the size of the cable subscriber base, the market for cable modems is very large. According to Arris' public statements, the markets in which it participates are "dynamic, highly competitive and require companies to react quickly and capitalize on change."

14. Cable modem capability is measured by a telecommunications standard named Data Over Cable Service Interface Specification ("DOCSIS"). DOCSIS is administered by Cable Television Laboratories, Inc., known as CableLabs, a not-for-profit research and development consortium composed of industry participants. DOCSIS provides cable modem manufacturers and service providers a common method for products to work together in a predictable manner. DOCSIS has evolved over time to support new capabilities, including higher Internet speeds.The cable modems at issue in this case used the DOCSIS 3.0 standard.

15.    Cable modems may be differentiated based on the "bits per second" or "bps" they can process. A "bit" is a basic unit of information in computing and digital communications. The term "Gbps" is a measurement in billions of bits per second, "Mbps" is a measurement in millions of bits per second, and "Kbps" is a measurement in thousands of bits per second. Generally speaking, larger bps units denote higher data speed capability. Similarly, cable modems are equipped with "upload" and "download" channels for data. The more channels a cable modem has, the more bps it can handle, improving capability.

**B. Arris Markets the Modem as "Delivering the Fastest Speeds" and the "Most Reliable" Connection to the Internet.**

16.    On its website, Arris describes its SURFboard line of cable modems as follows:

> The Internet brings us together. It lets us experience the wealth of our global community with friends, family, and the entire world. If you want an unmatched Internet experience, look no further than ARRIS SURFboard modems. We're the industry standard and the world's standard—with over 175 million ARRIS modems sold.

> ARRIS continuously evolves the SURFboard product line to deliver the fastest download speeds available.

> When you choose an ARRIS SURFboard, you're joining a 60-year legacy of innovation from the company that invented digital TV and brought wireless Internet into the home with the first cable modem gateway. The same company that the world's leading service providers choose to connect millions of people around the world to the Internet.

17.    During the Class Period, Arris prominently marketed and advertised the Modem based on its purported speed and reliability. For example, on its website and on the Amazon e-commerce platform, Arris included the following representation:

> Introducing the first Gigabit+ Cable Modem available in retail. The SURFboard SB6190 is a DOCSIS 3.0 modem [and] is capable of download speeds up to 1.4 Gbps! That's fast enough to download multiple HD movies in one minute! Power your home network with the SB6190 to deliver the fastest speeds and most reliable connection to the Internet. Own yours today and stop paying rental.

18.     In addition, on its website, Arris touted the Modem as "the First Gigabit Cable Modem" able to achieve "download speeds up to 1.4 Gbps." Arris further touted the Modem as a "DOCSIS 3.0 Cable Modem" with "32 download an 8 upload channels." Arris stated that the Modem supported the Internet Protocols "IPv4 and IPv6 – the latest Internet standard."

19.     The packaging for the Modem repeated these claims and representations: (a) "32 Downstream Channels, Speeds up to 1.4 Gbps"; (b) "DOCSIS 3.0 Cable Modem"; (c) "32 Download and 8 Upload Channels"; and (d) "Get what you pay for – supports gigabit service tiers." The packaging further contains the statement "First Gigabit+ Cable Modem" and is emblazoned with a seal stating "over 135 million sold" and "#1 selling modem."

**C. High Network Latency Results in Connection Delays and Prevents Cable Modems from Utilizing their Maximum Advertised Bandwidth.**

20.     In the context of computer networking, network latency refers to delays that occur in data communication over a network. Internet connections with low latency experience only small delay times, while Internet connections with high latency suffer from long delays.

21.     Although network speed is frequently only discussed in terms of bandwidth—the data rate supported by a network interface (e.g., 1.4 Gbps)—network latency matters equally to the end user's ability to make use of a device's advertised speeds. Excessive latency creates bottlenecks that prevent data from filling the network pipe, thus decreasing the effective throughput and limiting the maximum effective bandwidth of the connection.

22.     Network latency is measured in milliseconds ("ms"), where the number of milliseconds represents the amount of time each packet of data is delayed by. Smaller numbers indicate smaller delays, and larger numbers indicate substantial delays in the connection and a potential problem with the network device.

23.     For a cable modem, typical network latency between a computer and the cable modem ranges from approximately 5ms to 40ms. Latency above this range results in connection delays and prevents a cable modem from utilizing its maximum advertised bandwidth.

**D. Reports Surface that the Modem Suffers "Severe Latency Spikes."**

24.     In late 2016, reports surfaced regarding network latency experienced by Modem users. These reports attributed the problem to the Puma 6 Chipset made by Intel Corporation, which is a component of the Modem. According to an article on *DSLreports* dated November 29, 2016 entitled "The Arris SB6190 Modem & Puma 6 Chipset Have Some Major Issues":

> An electrical engineer and Cox broadband subscriber in our forums recently purchased the Arris SB6190, thinking it would be a notable upgrade from the Arris SB6183 and prepare him for the likely future launch of Cox gigabit broadband service in Arizona. The device, which features the Intel Puma 6 chipset, supports 32 x 8 channel bonding and is supposed to be relatively cutting edge -- at least among DOCSIS 3.0 devices.
>
> Unfortunately for xymox1 [the user], he discovered that this supposed upgrade is in fact a downgrade; one that results in notable connectivity issues and consistently severe latency spikes.
>
> The user, who has been charting home network performance for the better part of eight years, documented . . . just how well this new device performs. As in: it doesn't.
>
> "The problem is extreme and, frankly, horrific," notes the user. "Arris and Intel Puma6/MaxLinear traded off speed for latency thinking no one would notice. They tossed latency out the window to get 32 bonded channels of speed. They tossed users under the bus as no user is really gonna use 1 Gbps, but they will feel the latency and latency jitter in DNS [domain name system] lookups."
>
> In fact, the new modem appears to have doubled his latency before the first packet even leaves his house. The user contacted Cox, but even after ensuring the modem was running the latest firmware the problem persisted.
>
> Curious as to why this problem exists at all, the user opened the device and discovered that Arris appears to have replaced the Broadcom chipset common to the more recent Surfboard modems, with an Intel Puma 6 chipset. There appear to have been more than a few complaints about this particular chipset floating around the internet across North America, most of them regarding the same severe latency and jitter issues xymox1 has so carefully documented. Curiously, only some reviewers appear to have even noticed the device's performance issues.

It's unclear why such a problem wasn't caught earlier by CableLabs during product certification. Whatever the cause, posts to our forum appear to indicate that Arris is aware of the problem and currently working on a firmware update. When that updated firmware will arrive in the wild isn't clear.

25.     Arris acknowledged the latency problem with the Modems discussed in the November 29, 2016 article. A follow-up article in *DSLreports* dated December 1, 2016 entitled "Arris tells us it's working with Intel on SB6190, Puma 6 Problems" reported as follows:

Arris tells DSLreports the company is working closely with Intel on a problem in their SB6190 modem (more specifically the Intel Puma 6 Chipset) that causes owners to suffer significant jitter and latency on their connections. As we noted earlier this week the problem results in users seeing significant (250ms+) latency spikes and troubling DNS lookup delays when browsing the internet or gaming. The problem was examined in great detail in our forums by DSLreports regular xymox1.

Arris' statement makes it clear that Intel's Puma 6 chipset does appear to be the culprit in the jitter and latency problem.

"ARRIS has been working actively with Intel to address the issue, which resulted in some SURFboard SB6190 users reporting latency while running high-performance apps," a company spokesperson tells me.

"Intel is providing a firmware fix to correct the condition, and we will issue it as soon as it is available," the company added. "We remain committed to providing the best broadband experience for all users of ARRIS devices and regret any inconvenience this issue caused."

Granted the Puma 6 chipset isn't just embedded in the Arris SB6190, but a wide variety of modems from an assortment of different vendors. Our forums are filled with complaints from users on various ISPs all with one thing in common: they're using a modem with the Intel Puma 6 chipset as its CPU. For example users in our Cox forum note the same problem is impacting users that bought the Netgear CM700 cable modem as well.

How this large of a problem escaped multiple vendors and CableLabs for so long remains unclear. In a statement to DSLreports, CableLabs indicated that the performance issues inherent in the Puma 6 chipset effectively falls outside of its jurisdiction.

"Products submitted for CableLabs certification are tested for compliance with the DOCSIS specifications, which define the interface requirements that allow devices from different manufacturers to interoperate with each

other," the organization said. "The specifications specifically do not address performance requirements, so that manufacturers can differentiate their products through performance and additional features. As a result, CableLabs certification does not include performance testing."

26. In a December 3, 2016 article posted to *The Register* entitled "Why Your Gigabit Broadband Lags Like Hell – Blame Intel's Chipset," the Modem's network latency problem was further discussed. The article stated in part:

> Modems powered by Intel's Puma 6 chipset that suffer from bursts of game-killing latency include the Arris Surfboard SB6190, the Hitron CGNV4, and the Compal CH7465-LG, and Puma 6-based modems rebadged by ISPs, such as Virgin Media's Hub 3 and Comcast's top-end Xfinity boxes. There are other brands, such as Linksys and Cisco, that use the system-on-chip that may also be affected.

> The surges in lag are experienced by subscribers on various big ISPs, from Comcast, Charter and Cox in the US to Rogers in Canada and Virgin Media in the UK. You don't need a full 1Gbps connection to trigger the latency spikes – just at least a super-fast package and a buggy modem.

27. The *Register* article reproduced a graph created by "xymox1," the same Modem user quoted in the November 29, 2016 *DSLreports* article, which demonstrated the Modem's latency spikes:



28.     By contrast, a similar cable modem, also manufactured by Arris but using a Broadcom chipset, the SB6183, exhibited no similar latency issues in the test:



29.     The *Register* article quoted "xymox1" as follows:

"I excitedly swapped out my Arris SB1683 Broadcom modem for the new SB6190 Intel one expecting gigabit performance and immediately noticed slower webpage loads," he told *The Register*. "During first-person gaming, I was getting killed way more often for no apparent reason. I looked at an eight-year graph of latency from my home logs, and was horrified. Swapping back to my SB6183 solved all the issues."

30.     Finally, the *Register* article stated that Arris was aware of and acknowledged the network latency problems suffered by Modem users:

"Arris has been working actively with Intel to address the issue, which resulted in some SURFboard SB6190 users reporting latency concerns," a spokeswoman for Arris said.

"We plan to quickly issue Intel's firmware updates to resolve any latency. We remain committed to providing the best broadband experience for all users of Arris devices and regret any inconvenience this issue caused."

1    31.    Notwithstanding Arris' awareness and acknowledgement of the Modem's

2    network latency problems and customer complaints, Arris continues to fail to disclose the defect

3    in its marketing of the Modem, and continues to refuse to repair or replace the Modems.

4    **E.  Plaintiff Experiences Network Latency Caused by the Modem.**

5    32.    Plaintiff purchased a Modem for personal use in 2016, which he used to connect

6    his devices to the Internet. Plaintiff purchased the Modem through Amazon.com. Plaintiff's

7    Modem was new and in its original packaging when he received it.

8    33.    Plaintiff relied on the statements that Arris made about the Modem, and based on

9    those statements, believed that the Modem was a reliable cable modem that would perform as

10   represented, including that it provided the "fastest speeds" and the "most reliable connection" to

11   the Internet. Plaintiff did not know that the Modem suffered from abnormally high network

12   latency and unreliable Internet connectivity.

13   34.    Since his purchase of the Modem, Plaintiff has repeatedly suffered abnormally

14   high network latency and unreliable Internet connectivity, and continues to do so. Had Plaintiff

15   known that the Modem was defective, he would not have purchased the Modem.

16

17   **V.    CLASS ACTION ALLEGATIONS**

18   35.    Plaintiff brings this action as a class action pursuant to Rules 23(a) and 23(b)(3)

19   of the Federal Rules of Civil Procedure, on behalf of himself and a proposed Class defined as

20   follows:

21           All persons in the State of California who purchased an Arris SB6190
22           Cable Modem.

23   36.    Within the Class, there is one subclass for purposes of Plaintiff's claims under

24   the Song-Beverly Consumer Warranty Act and the Consumer Legal Remedies Act (the

25   "Subclass"). The proposed Subclass is defined as follows:

26           All persons in the State of California who purchased an Arris SB6190
27           Cable Modem for personal, family or household purposes.

28

37.     Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, coconspirators, successors, subsidiaries, and assigns. Also excluded from the Class are any judges, justices, or judicial officers presiding over this matter and the members of their immediate families and judicial staff.

38.     This action is brought and may be properly maintained as a class action pursuant to Rule 23. This action satisfies the requirements of Rule 23, including numerosity, commonality, typicality, adequacy, predominance, and superiority.

39.     ***Numerosity.*** The Class and Subclass are so numerous that the individual joinder of all members is impracticable. While the Class's and Subclass's exact number are currently unknown and can only be ascertained through appropriate discovery, Plaintiff, on information and belief, alleges that the Class and Subclass include at least thousands of persons.

40.     ***Commonality.*** Common legal and factual questions exist that predominate over any questions affecting only individual Class or Subclass Members. These common questions, which do not vary among Class Members and which may be determined without reference to any Class Member's individual circumstances, include, but are not limited to:

    a.   Whether the Modem contains a defect that causes abnormally high network latency;

    b.   Whether the Modem is of the same quality as those generally acceptable in the market;

    c.   Whether the Modem is fit for the ordinary purposes for which the goods are used;

    d.   Whether the Modem was adequately contained, packaged, and labeled;

    e.   Whether Arris breached its implied warranty of merchantability in violation of the Song-Beverly Consumer Warranty Act;

    f.   Whether Arris represented that the Modem has characteristics, uses, or benefits that it does not have in violation of the CLRA;

g.  Whether Arris represented that the Modem is of a particular standard, quality, or grade when it is of another in violation of the CLRA;

h.  Whether Arris' representations and omissions regarding the Modem were false and misleading and constitute false advertising in violation of the FAL;

i.  Whether Arris engaged in unlawful, fraudulent, or unfair business practices in violation of the UCL,

j.  Whether Plaintiff, the Class, and the Subclass have been damaged by the wrongs alleged and are entitled to compensatory or punitive damages;

k.  Whether Plaintiff and the Class are entitled to injunctive or other equitable relief, including restitution.

41.    Each of these common questions is also susceptible to a common answer that is capable of classwide resolution and will resolve an issue central to the validity of the claims.

42.    ***Adequacy of Representation.*** Plaintiff is an adequate Class and Subclass representative because he is a Class and Subclass Member, and his interests do not conflict with the Class's or Subclass's interests. Plaintiff retained counsel who are competent and experienced in consumer-protection class actions. Plaintiff and his counsel intend to prosecute this action vigorously for the Class's and Subclass's benefit and will fairly and adequately protect their interests.

43.    ***Predominance and Superiority.*** The Class and Subclass can be properly maintained because the above common questions of law and fact predominate over any questions affecting individual Class or Subclass Members. A class action is also superior to other available methods for the fair and efficient adjudication of this litigation because individual litigation of each Class and Subclass Member's claim is impracticable. Even if each Class Member could afford individual litigation, the court system could not. It would be unduly burdensome if thousands of individual cases proceed. Individual litigation also presents the potential for inconsistent or contradictory judgments, the prospect of a race to the courthouse, and the risk of an inequitable allocation of recovery among those with equally meritorious claims. Individual

litigation would increase the expense and delay to all parties and the courts because it requires individual resolution of common legal and factual questions. By contrast, the class-action device presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

## VI.    CLAIMS FOR RELIEF

### First Claim for Relief

### Violation of California Song-Beverly Consumer Warranty Act,

### Cal. Civ. Code §§ 1790 et seq.

44.    Plaintiff, individually and on behalf of the Subclass, incorporates by reference all of the allegations contained in the preceding paragraphs of this Complaint.

45.    Plaintiff brings this claim individually and on behalf of the Subclass against Defendant.

46.    Plaintiff and the Subclass purchased the SB6190 Modem manufactured by Defendant that was marketed for fast and reliable Internet connectivity.

47.    Plaintiff and the Subclass purchased the SB6190 Modem new and in its original packaging and did not alter their Modems.

48.    At the time of purchase, Defendant was in the business of manufacturing and selling cable modems, including the SB6190 Modem.

49.    The SB6190 Modems were used and bought primarily for personal, family, or household purposes and are therefore consumer goods.

50.    Arris's SB6190 Modem contained a defect that causes severe network latency. This defect was present in Arris' SB6190 Modems when they left the exclusive control of Defendant and therefore existed during the duration of the warranty period.

51.    Arris's SB6190 Modems were not of the same quality as those generally acceptable in the trade; were not fit for the ordinary purposes of fast and reliable Internet

connectivity for which the goods are used; were not adequately contained, packaged, and labeled; and did not conform to the promises and facts stated on the container and label.

52. Defendant, therefore, breached the implied warranty of merchantability, which by law is provided in every consumer agreement for the sale of goods, including for the sale of Arris's SB6190 Modem.

53. As a direct and proximate cause of Defendant's breach of the implied warranty of merchantability, Plaintiff and the Subclass have been damaged by receiving an inferior product from that which they were promised. Plaintiff and the Subclass, therefore, have the right to cancel and recover the purchase price of their SB6190 Modem.

**Second Claim for Relief**

**Violation of California Consumer Legal Remedies Act,**

**Cal. Civ. Code §§ 1750 *et seq.***

54. Plaintiff, individually and on behalf of the Subclass, incorporates by reference all of the allegations contained in the preceding paragraphs of this Complaint.

55. Plaintiff brings this claim individually and on behalf of the Subclass against Defendant.

56. Defendant is a "person" as defined in CAL. CIV. CODE § 1761(c).

57. Plaintiff and the Subclass acquired and purchased the SB6190 Modem for personal, family, or household purposes and are therefore "consumers" as defined in CAL. CIV. CODE § 1761(d).

58. The SB6190 Modems that Plaintiff and the Subclass purchased from Defendant are "goods" as defined by CAL. CIV. CODE § 1761(a).

59. The purchases by Plaintiff and the Subclass of the goods sold by Defendant constitute "transactions" as defined by CAL. CIV. CODE §§ 1761(e) and 1770.

60. In connection with its sale of goods to Plaintiff and the Subclass, Defendant violated the CLRA by:

a. Misrepresenting to Plaintiff and the Subclass that the SB6190 Modems were reliable cable modems, when in fact, they have a defect that causes severe network latency, in violation of CAL. CIV. CODE §§ 1770(a)(5), (7), (9), and (16);

b. Misrepresenting to Plaintiff and the Subclass that Defendant's goods had characteristics, uses, and benefits that they did not have, in violation of CAL. CIV. CODE § 1770(a)(5);

c. Representing to Plaintiff and the Subclass that Defendant's goods were of a particular standard, quality, or grade, when they were of another in violation of CAL. CIV. CODE § 1770(a)(7);

d. Advertising goods to Plaintiff and the Subclass with the intent not to sell them as advertised, in violation of CAL. CIV. CODE § 1770(a)(9); and

e. Misrepresenting to Plaintiff and the Subclass that the subject of a transaction has been supplied in accordance with a previous representation when it had not, in violation of CAL. CIV. CODE § 1770(a)(16).

61.     In addition, under California law, a duty to disclose arises in four circumstances: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant has exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.

62.     Defendant had a duty to disclose to Plaintiff and the Subclass that the SB6190 Modem contains a defect that causes it to fail for the following three independent reasons: (a) Defendant had exclusive knowledge of the information at the time of sale; (b) Defendant actively concealed from Plaintiff and the Subclass this defect, which causes substantial Internet connectivity failures and is important to customers; and (c) Defendant made partial representations to Plaintiff and the Subclass regarding the speed and reliability of the Modem.

63.     Defendant violated the CLRA by supplying defective Modems and by further concealing this defect from Plaintiff and the Subclass.

64. Defendant's misrepresentations and omissions in violation of the CLRA were likely to mislead an ordinary consumer. Plaintiff and the Subclass reasonably understood Defendant's representations and omissions to mean that the SB6190 Modems were reliable for typical consumer use and did not contain a defect that would hamper their performance.

65. Defendant's misrepresentations and omissions alleged herein were material in that a reasonable person would attach importance to the information and would be induced to act upon the information in making purchase decisions.

66. Plaintiff and the Subclass relied to their detriment on Defendant's misrepresentations and omissions in purchasing the Modems.

67. Plaintiff, on behalf of himself and the Subclass, demands judgment against Defendant under the CLRA for injunctive relief.

68. Plaintiff, on behalf of himself and the Subclass, further intends to seek compensatory and punitive damages. Pursuant to CAL. CIV. CODE § 1782(a), Plaintiff will serve Defendant with notice of its alleged violations of the CLRA by certified mail return receipt requested. If, within thirty days after the date of such notification, Defendant fails to provide appropriate relief for its violations of the CLRA, Plaintiff will amend this Complaint to seek monetary damages.

69. Notwithstanding any other statements in this Complaint, Plaintiff does not seek monetary damages in conjunction with his CLRA claim—and will not do so—until this thirty-day period has passed.

**Third Claim for Relief**

**Violation of California False Advertising Law,**

**Cal. Bus. & Prof. Code §§ 17500 *et seq.***

70. Plaintiff, individually and on behalf of the Class, incorporates by reference all of the allegations contained in the preceding paragraphs of this Complaint.

71. Plaintiff brings this claim individually and on behalf of the Class against Defendant.

72.     Defendant engaged in advertising and marketing to the public and offered for sale the SB6190 Modem.

73.     Defendant engaged in the advertising and marketing alleged herein with the intent to induce the sale of the Modems to consumers like Plaintiff.

74.     Defendant's advertising and marketing representations regarding its SB6190 Modems were false, misleading, and deceptive as set forth in detail above. Defendant also concealed the material information from consumers that these cable modems contained a defect that causes severe network latency and unreliable Internet connectivity.

75.     Defendant's misrepresentations and omissions alleged herein deceive or have the tendency to deceive the general public regarding the reliability of its SB6190 Modems for ordinary consumer use.

76.     Defendant's misrepresentations and omissions alleged herein were the type of misrepresentations that are material, i.e., a reasonable person would attach importance to them and would be induced to act on the information in making purchase decisions.

77.     Defendant's misrepresentations and omissions alleged herein are objectively material to a reasonable consumer, and therefore reliance upon such misrepresentations may be presumed as a matter of law.

78.     At the time Defendant made the misrepresentations and omissions alleged herein, Defendant knew or should have known that they were untrue or misleading and acted in violation of CAL. BUS. & PROF. CODE §§ 17500 *et seq.*

79.     Unless restrained by this Court, Defendant will continue to engage in untrue and misleading advertising in violation of CAL. BUS. & PROF CODE §§ 17500 *et seq.*

80.     As a result, Plaintiff and each member of the Class has been injured, has lost money or property, and is entitled to relief. Plaintiff and the Class seek restitution, injunctive relief, and all other relief permitted under CAL. BUS. & PROF. CODE §§ 17500 *et seq.*

**Fourth Claim for Relief**

**Violation of California Unfair Competition Law,**

**Cal. Bus. & Prof. §§ 17200 *et seq.***

81.     Plaintiff, individually and on behalf of the Class, incorporates by reference all of the allegations contained in the preceding paragraphs of this Complaint.

82.     Plaintiff brings this claim individually and on behalf of the Class against Defendant.

83.     Plaintiff has standing to pursue this claim because he has suffered injury in fact and has lost money or property as a result of Defendant's actions as described *supra*. All Class Members overpaid for the SB6190 Modem due to Defendant's concealment of a defect with the SB6190 Modem.

84.     Defendant's actions as alleged herein constitute an "unlawful" practice as encompassed by CAL. BUS. & PROF. CODE §§ 17200 *et seq.* because Defendant breached the implied warranty of merchantability in violation of the California Song-Beverly Consumer Warranty Act, CAL. CIV. CODE §§ 1790 *et seq.* and further violated the CLRA, CAL. CIV. CODE §§ 1750 *et seq.* and the FAL, CAL. BUS. & PROF. CODE §§ 17500 *et seq.*

85.     Defendant's actions as alleged herein constitute a "fraudulent" practice because, by representing that the SB6190 Modems were reliable for ordinary consumer use but concealing that the cable modems actually contained a defect, Defendant's conduct was likely to deceive consumers. Defendant's failure to disclose this defect, especially in light of its claims about speed and reliability, constitute a material omission in violation of the UCL.

86.     Defendant's actions as alleged in this Complaint constitute an "unfair" practice, because they offend established public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to Arris's customers. The harm caused by Arris's wrongful conduct outweighs any utility of such conduct and has caused—and will continue to cause—substantial injury to Plaintiff and the Class. Arris could and should have chosen one of many reasonably available alternatives, including not selling cable modems that contained a defect, disclosing the defect to prospective purchasers, and/or not representing that its cable

modems were suitable for consumer use. Additionally, Defendant's conduct was "unfair," because it violated the legislatively declared policies reflected by California's strong consumer protection, consumer warranty, and false advertising laws, including the California Song-Beverly Consumer Warranty Act, CAL. CIV. CODE §§ 1790 *et seq.*, the CLRA, CAL. CIV. CODE §§ 1750 *et seq.*, and the FAL, CAL. BUS. & PROF. CODE §§ 17500 *et seq.*

87.     As a result of Defendant's unlawful, fraudulent, and unfair conduct, Plaintiff and the Class were damaged. Plaintiff and the Class received an inferior product from that which they were promised. Had Defendant disclosed the defect with the SB6190 Modems, Plaintiff and the Class would not have purchased the cable modems or would have paid substantially less.

88.     Defendant's wrongful business practices constitute a continuing course of unfair competition because it continues to represent that the SB6190 is reliable, continues to fail to disclose the defect, and continues to refuse to repair or replace the modems. Plaintiff and the Class, therefore, seek equitable relief to remedy Arris's deceptive marketing, advertising, and packaging and to recall all affected cable modems.

89.     Plaintiff and the Class also seek an order requiring Defendant to make full restitution of all monies they have wrongfully obtained from Class Members, as well as all other relief permitted under CAL. BUS. & PROF. CODE §§ 17200 *et seq.*

**PRAYER FOR RELIEF**

Plaintiff, on behalf of himself and the Class, requests that the Court order the following relief and enter judgment against Defendant as follows:

A.     An order certifying the proposed Class and Subclass under Rule 23;

B.     An order appointing Plaintiff and his counsel to represent the Class and Subclass;

C.     A declaration that Defendant has engaged in the illegal conduct alleged;

D.     An order that Defendant be permanently enjoined from its improper conduct;

E.    A judgment awarding Plaintiff and the Class restitution and disgorgement of

all compensation obtained by Defendant from its wrongful conduct;

F.    A judgment awarding Plaintiff and the Class compensatory damages pursuant to

its breach of implied warranty claim in an amount to be proven at trial;

G.    Prejudgment and postjudgment interest at the maximum allowable rate;

H.    Attorneys' fees and expenses and the costs of this action; and

I.    All other relief that the Court deems necessary, just, and proper.


**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all claims so triable.


Dated: March 31, 2017          By:    /s/ Noah M. Schubert
                                      ROBERT C. SCHUBERT (S.B.N. 62684)
                                      WILLEM F. JONCKHEER (S.B.N. 178748)
                                      NOAH M. SCHUBERT (S.B.N. 278696)
                                      SCHUBERT JONCKHEER & KOLBE LLP
                                      Three Embarcadero Center, Suite 1650
                                      San Francisco, CA 94111
                                      Telephone:    (415) 788-4220
                                      Facsimile:    (415) 788-0161
                                      rschubert@sjk.law
                                      wjonckheer@sjk.law
                                      nschubert@sjk.law

                                      *Counsel for Plaintiff*