UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE ARRIS CABLE MODEM CONSUMER LITIGATION<br><br>This Document Relates to: All Actions | Case No. 17-CV-01834-LHK<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND AND DENYING MOTION TO STRIKE**<br><br>Re: Dkt. No. 33 |

Before the Court is Defendant Arris International plc's motion to dismiss certain causes of action and to strike parts of the consolidated amended complaint. ECF No. 33. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS Arris's motion to dismiss Plaintiffs' Consumer Legal Remedies Act, False Advertising Law, Unfair Competition Law, and unjust enrichment/quasi-contract causes of action with leave to amend. The Court DENIES Arris's motion to strike.

## I.    BACKGROUND

### A.    Factual Background

"A cable modem is a device that enables a computer to transmit data over a coaxial cable

1

line.  The cable modem is located at the cable subscriber's home and connects to the cable network to receive and transmit digital information between subscriber-owned devices (such as desktop PCs or routers) and the service provider's headend or central office, providing Internet connectivity for data and/or voice services."  Consolidated Amended Complaint ("CAC"), ECF No. 30 ¶ 42.  Cable modems' processing speeds are measured in "bits per second" ("bps").  *Id.* ¶ 46.  "The term 'Gbps' is a measurement in billions of bits per second, 'Mbps' is a measurement in millions of bits per second, and 'Kbps' is a measurement in thousands of bits per second.  Generally speaking, larger bps units denote higher data speed capability."  *Id.*  In addition, cable modems have upload and download channels for data.  *Id.*  "The more channels a cable modem has, the more bps it can handle, improving capability."  *Id.*

A modem user's experience is also affected by the amount of network latency.  *Id.* ¶ 51.  "[N]etwork latency refers to delays that occur in data communications over a network.  Internet connections with low latency experience only small delay times, while those with high latency suffer from long delays."  *Id.*  "Network latency is measured in milliseconds ('ms'), where the number of milliseconds represents the amount of time each packet of data is delayed."  *Id.* ¶ 53.  According to Plaintiffs, "[f]or a cable modem, typical network latency between a computer and a cable modem ranges from approximately 5 ms to 40 ms.  Latency above this range results in connection delays and prevents a cable modem from utilizing its maximum advertised bandwidth."  *Id.* ¶ 54.

Arris manufactures cable modem hardware for cable service providers and consumers.  *Id.* ¶ 43.  At issue in this suit is Arris's SURFboard SB 6190 cable modem (the "Modem").

Plaintiffs are citizens of Alabama, Arizona, California, the District of Columbia, Georgia, Hawaii, Illinois, Kansas, Louisiana, Massachusetts, New Jersey, New York, Ohio, Oklahoma Pennsylvania, Texas, Virginia, and Washington who bought Arris's SURFboard SB 6190 cable modem between 2015 and 2017.  CAC ¶¶ 1, 5-36.  Relevant here, California Plaintiffs Joseph Palma and Michael Person bought Modems in 2015, California Plaintiff Jon Walton bought a

Modem "in or after 2015," California Plaintiffs Greg Knowles and Carlos Reyna bought Modems in 2016, and California Plaintiff Brian Alexander bought a Modem in 2017. *Id.* ¶¶ 10-15.

Plaintiffs allege that Arris marketed the Modem as fast and reliable. Specifically, Plaintiffs allege that Arris's website describes the SURFboard line of cable modems as follows:

> The Internet brings us together. It lets us experience the wealth of our global community with friends, family, and the entire world. If you want an unmatched Internet experience, look no further than ARRIS SURFboard modems. We're the industry standard and the world's standard—with over 175 million ARRIS modems sold.

> ARRIS continuously evolves the SURFboard product line to deliver the fastest download speeds available.

> When you choose an ARRIS SURFboard, you're joining a 60-year legacy of innovation from the company that invented digital TV and brought wireless Internet into the home with the first cable modem gateway. The same company that the world's leading service providers choose to connect millions of people around the world to the internet.

*Id.* ¶ 47.

Plaintiffs also allege that on Arris's website and on Amazon.com Arris emphasized the Modem's speed and reliability with the following language:

> Introducing the first Gigabit+ Cable Modem available in retail. The SURFboard SB6190 is a DOCSIS 3.0 modem [and] is capable of download speeds up to 1.4 Gbps! That's fast enough to download multiple HD movies in one minute! Power your home network with the SB6190 to deliver the fastest speeds and most reliable connection to the Internet. Own yours today and stop paying rental.

*Id.* ¶ 48.

Plaintiffs also highlight that Arris described the Modem on its website as "the First Gigabit Cable Modem" able to achieve "download speeds up to 1.4 Gbps," and as a "DOCSIS 3.0 Cable Modem" with "32 download an[d] 8 upload channels." Arris also stated that the Modem supported the Internet Protocols "IPv4 and IPv6—the latest Internet standard." *Id.* ¶ 49. Plaintiffs allege that the Modem's packaging included the following claims: "32 Downstream Channels, Speeds up to 1.4 Gbps"; "DOCSIS 3.0 Cable Modem"; "32 Download and 8 Upload Channels; and "Get what you pay for—supports gigabit service tiers." *Id.* ¶ 50. Finally, Plaintiffs allege that

3

the Modem packaging also contains the statement "First Gigabit+ Cable Mode" and contains seals stating "over 135 million sold" and "#1 selling modem." *Id.*

Plaintiffs allege that they "relied on the statements that Arris made about the Modems. Based on those statements, Plaintiffs believed that the Modems were reliable cable modems that would perform as represented, including that they provided the 'fastest speeds' and the 'most reliable connection' to the Internet." *Id.* ¶ 96. Plaintiffs also contend that in purchasing the Modems, they "relied to their detriment on Defendant's misrepresentations and omissions" that the "Modems were reliable for typical consumer use and did not contain a defect that would hamper their performance." *Id.* ¶¶ 159, 161.

Plaintiffs contend that in contrast to Arris's representations about the Modem's speed and reliability, the Modem—specifically, the Modem's Intel Puma 6 Chipset—has a defect that causes severe network latency. *Id.* ¶ 55. In support of this contention, Plaintiffs cite a post from the website *DSLReports* and an article from the British newspaper *The Register*, both of which feature technical analysis of the Modem by anonymous *DSLReports* forum user "xymox1." *Id.* ¶¶ 55, 57-60. Plaintiffs also cite the same *Register* article and a separate *DSLReports* post, in which Arris representatives acknowledge the latency issue and state that Arris is working with Intel to deploy a firmware update to resolve the issue. *Id.* ¶¶ 56, 61.

The California Plaintiffs allege that they experienced network latency issues. Specifically, B. Alexander alleges that he "experienced high network latency issues and packet errors." *Id.* ¶ 69. Knowles "experienced Internet connectivity issues, including fluctuations in Internet speeds." *Id.* ¶ 70. Palma "experienced network latency and intermittent packet loss." *Id.* ¶ 71. Person "experienced high network latency while online gaming and web browsing." *Id.* ¶ 72. "Person contacted Arris when he encountered latency issues. At first, Arris claimed there was no problem and then later blamed the Internet service provider and claimed there would be a prompt firmware update addressing the identified issues." *Id.* Reyna "repeatedly suffered abnormally high network latency and unreliable Internet connectivity." *Id.* ¶ 73. Walton "experienced slow

4

Internet connection and packet loss." *Id.* ¶ 74.

Plaintiffs contend that if they had "known that the Modems were defective, they would not have purchased the Modems," *id.* ¶ 97, or they "would have paid substantially less," *id.* ¶ 181.

## B. Procedural History

On March 31, 2017, Carlos Reyna filed a putative class action complaint against Arris. ECF No. 1.[1] On May 11, 2017, Greg Knowles and 16 other plaintiffs brought a separate putative class action against Arris. Case No. 5:17-CV-2740, ECF No. 1. On May 25, 2017, Reyna filed an administrative motion to consider whether his case and the Knowles case should be related. ECF No. 14. On June 5, 2017, the Court granted Reyna's motion to relate the Knowles case. ECF No. 15. On June 30, 2017, the Court granted the parties' stipulation to consolidate the cases and set a deadline of July 21, 2017 for the plaintiffs to file a consolidated complaint. ECF No. 24.

On July 5, 2017, the Court held a case management conference. ECF No. 26. At the case management conference, the Court approved the parties' stipulation to streamline the case by adjudicating the California law claims before the claims from other states. ECF No. 40 at 5:5-5:17.

On July 21, 2017, Plaintiffs filed the consolidated amended complaint, which included several additional named plaintiffs. ECF No. 30. On August 21, 2017, Arris filed the instant motion to dismiss and to strike parts of the CAC. ECF No. 33 ("Mot."). On September 18, 2017, Plaintiffs filed an opposition. ECF No. 41 ("Opp."). On October 5, 2017, Arris filed a reply. ECF No. 42 ("Reply").

On October 20, 2017, the Court denied the parties' request to extend the fact discovery deadline for merits-related discovery because the Court had not bifurcated discovery between class certification and merits issues. ECF No. 46.

Pursuant to Civil Local Rule 7-1(b), the Court found the instant motion suitable for resolution without oral argument and took the motion under submission on December 17, 2017.

---

[1] All references to the docket refer to Case No. 5:17-CV-1834 unless otherwise specified.

United States District Court
Northern District of California

ECF No. 47.

## II.     LEGAL STANDARD

### A.     Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1)

A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  A motion to dismiss for lack of subject matter jurisdiction will be granted if the complaint on its face fails to allege facts sufficient to establish subject matter jurisdiction.  *See Savage v. Glendale Union High Sch.,* 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).  If the plaintiff lacks standing under Article III of the United States Constitution, then the Court lacks subject matter jurisdiction, and the case must be dismissed.  *See Steel Co. v. Citizens for a Better Env't* 523 U.S. 83, 101-02 (1998).  In considering a Rule 12(b)(1) motion, the Court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir. 1988).  Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the Court's jurisdiction, *see Chandler v. State Farm Mut. Auto. Ins. Co.,* 598 F.3d 1115, 1122 (9th Cir. 2010), by putting forth "the manner and degree of evidence required" by whatever stage of the litigation the case has reached, *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992); *see also Barnum Timber Co. v. Envtl. Prot.Agency,* 633 F.3d 894, 899 (9th Cir. 2011) (at the motion to dismiss stage, Article III standing is adequately demonstrated through allegations of "specific facts plausibly explaining" why the standing requirements are met).

### B.     Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a

Case No. 17-CV-01834-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND AND DENYING MOTION TO STRIKE

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Nonetheless, the Court is not required to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, "'a plaintiff may plead [him]self out of court'" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. County of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quoting *Warzon v. Drew*, 60 F.3d 1234, 1239 (7th Cir. 1995)).

## C. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 9(b)

Claims sounding in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). Under the federal rules, a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy this standard, the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). The plaintiff must

United States District Court
Northern District of California

also plead facts explaining why the statement was false when it was made. *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1549 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F. Supp. 1297 (C.D. Cal. 1996).

"When an entire complaint . . . is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint . . . ." *Vess*, 317 F.3d at 1107 (9th Cir. 2003). The Ninth Circuit has recognized that "it is established law in this and other circuits that such dismissals are appropriate," even though "there is no explicit basis in the text of the federal rules for the dismissal of a complaint for failure to satisfy 9(b)." *Id.* A motion to dismiss a complaint "under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Id.*

## D.      Motion to Strike Pursuant to Federal Rule of Civil Procedure 12(f)

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 26(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Motions to strike are generally disfavored and "should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation . . . . If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) (citations omitted). "With a motion to strike, just as with a motion to dismiss, the court should view the pleading in the light most favorable to the nonmoving party." *Id.* "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Cruz v. Bank of New York Mellon,* No. 12-846, 2012 WL 2838957, at *2 (N.D. Cal. July 10, 2012) (citing *Whittlestone, Inc.*

United States District Court
Northern District of California

*v. Handi-Craft Co.,* 618 F.3d 970, 973 (9th Cir. 2010)).

**E.      Leave to Amend**

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely granted when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (ellipses omitted).  However, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892-93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**III.      DISCUSSION**

As relevant here, the CAC asserts four causes of action under California law on behalf of the named California Plaintiffs and the California Subclass.  First, the California Plaintiffs assert a violation of California's Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790 *et seq.* CAC ¶¶ 139-48.  Second, the California Plaintiffs assert a violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*  CAC ¶¶ 149-63.  Third, the California Plaintiffs allege a violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*  CAC ¶¶ 164-74.  Fourth, the California Plaintiffs allege a violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*  CAC ¶¶ 175-83.  Plaintiffs individually and on behalf of the Nationwide Class also assert a claim for unjust enrichment/quasi-contract.  CAC ¶¶ 445-48.

In the instant motion to dismiss, Arris argues that the Plaintiffs have failed to establish Article III or statutory standing for their CLRA, FAL, and UCL claims.  Mot. at 8.  Specifically, with regard to statutory standing, Arris argues that Plaintiffs have not adequately pleaded reliance on any of the allegedly misleading statements that Plaintiffs attribute to Arris.  Arris also argues

9

that Plaintiffs have failed to satisfy Rule 9(b)'s heightened pleading standard for the CLRA, FAL, and UCL claims, which sound in fraud. Mot. at 9-10. Arris also contends that the unjust enrichment claim should be dismissed because no such cause of action exists under California law. Mot. at 13. Finally, Arris argues that the Court should strike the CAC's references to xymox1's analysis of the Modem and xymox1's related opinions. Mot. at 10-13. Arris does not challenge the Song-Beverly Consumer Warranty Act cause of action. The Court addresses these arguments in turn.

## A.     Constitutional and Statutory Standing

### 1.  Constitutional Standing

To have Article III standing, a plaintiff must plead and prove that he or she has suffered sufficient injury to satisfy the "case or controversy" requirement of Article III of the United States Constitution. *See Clapper v. Amnesty Int'l,* 568 U.S. 398 U.S. 408 (2013) ("'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'" (quoting *Raines v. Byrd,* 521 U.S. 811, 818 (1997))). Therefore, for Article III standing, a plaintiff must establish: (1) injury-in-fact that is concrete and particularized, as well as actual or imminent; (2) that this injury is fairly traceable to the challenged action of the defendant; and (3) that this injury is redressable by a favorable ruling from the court. *See Monsanto Co. v. Geertson Seed Farms,* 561 U.S. 139, 149 (2010) ("Standing under Article III of the Constitution requires that an injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.").

Arris does not develop its Article III standing argument beyond stating that "the California Plaintiffs lack standing to bring their claims under Article III of the United States Constitution" and asserting that "[e]ach California Plaintiff must be required to establish his standing under Article III and the CLRA, FAL and UCL, by setting forth specific facts alleging injury-in-fact and reliance." Mot. at 8-9. The rest of the single page that Arris devotes to its standing argument focuses on the reliance element of statutory standing for the CLRA, FAL, and UCL, which the

United States District Court
Northern District of California

1    Court discusses in more detail in Section III.A.2, below. Reliance is not an element of Article III

2    standing. As a result, it is not clear why Arris believes that Plaintiffs lack Article III standing, and

3    Arris does not address Article III standing in its reply. However, given that Arris mentions the

4    need for the California Plaintiffs to establish injury-in-fact, *see* Mot. at 8-9, the Court construes

5    Arris's motion as arguing that Plaintiffs have not adequately alleged an injury-in-fact.

6        This argument fails. Plaintiffs have alleged that if they had "known that the Modems were

7    defective, they would not have purchased the Modems," CAC ¶ 97, or they "would have paid

8    substantially less" for the Modems, *id.* ¶ 181. In other words, Plaintiffs alleged that they "spent

9    money that, absent [Arris's] actions, they would not have spent," which constitutes "a

10   quintessential injury-in-fact." *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011); *see*

11   *also Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1129-30 (N.D. Cal. 2013) (same);

12   *Brazil v. Dole Food Co., Inc.*, 935 F. Supp. 2d 947, 961 (N.D. Cal. 2013) (same); *Pirozzi v. Apple*

13   *Inc.*, 913 F. Supp. 2d 840, 846-47 (N.D. Cal. 2012) ("Overpaying for goods or purchasing goods a

14   person otherwise would not have purchased based upon alleged misrepresentations by the

15   manufacturer would satisfy the injury-in-fact and causation requirements for Article III

16   standing.").

17       **2. Statutory Standing**

18       The UCL, FAL, and CLRA, all require a plaintiff to demonstrate statutory standing. To

19   establish statutory standing under the UCL or FAL, a plaintiff must demonstrate that she "suffered

20   injury in fact and [ ] lost money or property as a result of the unfair competition." Cal. Bus. &

21   Prof. Code § 17204; *see also id.* § 17535 (imposing an identical standing requirement for FAL

22   actions). First, with regard to the UCL, California courts have held that when the "unfair

23   competition" underlying a plaintiff's UCL claim consists of a defendant's misrepresentation, a

24   plaintiff must have actually relied on the misrepresentation, and suffered economic injury as a

25   result of that reliance, in order to have standing to sue. *See In re Tobacco II Cases,* 207 P.3d 20,

26   39 (Cal. 2009) (concluding that Proposition 64 added "an actual reliance requirement on plaintiffs

27

28
     Case No. 17-CV-01834-LHK
     ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND AND DENYING MOTION TO
     STRIKE

prosecuting a private enforcement action under the UCL's fraud prong"); *Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 687-88 (Ct. App. 2010) ("[W]e conclude that to have standing to bring a claim under the 'unlawful' prong of the UCL, in which the predicate unlawful conduct is based on misrepresentations, as here, the reasoning of *Tobacco II* is equally applicable and actual reliance is an element of the claim."); *accord Kwikset Corp. v. Superior Court,* 246 P.3d 877, 887 (Cal. 2011) (stating that "Proposition 64 requires that a plaintiff's economic injury come 'as a result of' the unfair competition or a violation of the false advertising law" and explaining that *Tobacco II* held that actual reliance was required). In line with this authority, this Court has consistently required allegations of actual reliance and injury at the pleading stage for claims under all three prongs of the UCL where such claims are premised on misrepresentations. *See Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1075 (N.D. Cal. 2014) (observing that in *Kwikset*, 246 P.3d 877, the "California Supreme Court suggested the actual reliance requirement applies whenever the underlying misconduct in a UCL action is fraudulent conduct"); *Kane v. Chobani, Inc.,* 973 F. Supp. 2d 1120, 1129 (2014) (requiring actual reliance under all three prongs of the UCL based on *Tobacco II*, *Durell*, and *Kwikset*); *Bruton v. Gerber Prods. Co.*, No. 12-CV-2412-LHK, 2014 WL 172111, at *6-7 (N.D. Cal. Jan. 15, 2014) (same); *Avoy v. Turtle Mountain, LLC*, 2014 WL 587173, at *4-5 (N.D. Cal. Feb. 14, 2014) ("As this Court recently confirmed, to state a claim under the UCL, FAL, and CLRA, Avoy must allege facts sufficient to show that she relied on the defendant's alleged misrepresentation.").

A showing of actual reliance under the UCL requires a plaintiff to establish that "the defendant's misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-producing conduct." *Tobacco II,* 207 P.3d at 39 (internal quotation marks omitted). "A plaintiff may establish that the defendant's misrepresentation is an immediate cause of the plaintiff's conduct by showing that in its absence the plaintiff in all reasonable probability would not have engaged in the injury-producing conduct." *Id.* (internal quotation marks omitted). While a plaintiff need not demonstrate that the defendant's misrepresentations were "the sole or even the

12

predominant or decisive factor influencing his conduct," the misrepresentations must have "played

a substantial part" in the plaintiff's decisionmaking. *Id.* (internal quotation marks omitted).

Further, "a presumption, or at least an inference, of reliance arises wherever there is a showing

that a misrepresentation was material." *Id.*

Second, the FAL contains the same statutory standing requirement as the UCL. *See*

*Kwikset Corp. v. Superior Court,* 246 P.3d at 884 ("Proposition 64 made identical changes to the

standing provision of the false advertising law [as to the UCL].").  As a result, courts have

interpreted the statutory standing requirements in the FAL and UCL interchangeably. *See id.*; *see*

*also Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013) (interpreting reliance element

of UCL and FAL claims together).

Third, to have standing under the CLRA, a plaintiff must allege that he relied on the

defendant's alleged misrepresentations and that he suffered injury as a result. *See, e.g.*, *Sateriale*

*v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 794 (9th Cir. 2012) ("As with the UCL, consumers

seeking to recover damages under the CLRA based on a fraud theory must prove actual reliance

on the misrepresentation and harm." (internal quotation marks omitted)); *Durell*, 108 Cal. Rptr. 3d

at 697 (plaintiff must have "relied on a[ ] representation by" defendant in order to have standing to

bring CLRA claim based on a misrepresentation).  "In *Meyer v. Sprint Spectrum L.P.*, 200 P.3d

295, 299, 302-03 (Cal. 2009), the California Supreme Court made clear that the CLRA's 'any

damage' requirement is a capacious one that includes any pecuniary damage as well as

opportunity costs and transaction costs that result when a consumer is misled by deceptive

marketing practices." *Hinojos*, 718 F.3d at 1108.  "Because the 'any damage' standard includes

even minor pecuniary damage, [the Ninth Circuit] [has] conclude[d] that any plaintiff who has

standing under the UCL's and FAL's 'lost money or property' requirement will, *a fortiori*, have

suffered 'any damage' for purposes of establishing CLRA standing." *Id.*

Here, Arris focuses solely on the reliance element of statutory standing.  Arris

acknowledges that Plaintiffs have identified several allegedly misleading statements.  Mot. at 8.

13

Arris also acknowledges that Plaintiffs have alleged that they "relied on the statements that ARRIS made about the Modems." *Id.* (quoting CAC ¶ 96). However, Arris argues that "Plaintiffs fail to allege that they saw any of these alleged misrepresentations prior to their purchase of the Modems, or that they relied on these representations in making their purchase decision." Mot. at 8. Arris argues that reliance must be alleged with greater specificity and urges the Court "not [to] countenance Plaintiffs' vague, conclusory, mass pleading style." Mot. at 8. Yet Arris cites no authority to support its contention that general allegations of reliance are insufficient to establish statutory standing as a matter of California law, as distinct from Rule 9(b)'s heightened pleading requirements. The Court need not resolve what level of specificity is required to plead reliance under California law, however, because the Court concludes that Plaintiffs have not satisfied Rule 9(b), as explained below.

## B. Rule 9(b)'s Heightened Pleading Requirement

Rule 9(b)'s particularity requirement applies to Plaintiffs' UCL, CLRA, and FAL claims because these claims are all based on Arris's allegedly fraudulent course of conduct—the concealment of the Modem's latency defect. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL."); *Brazil*, 935 F. Supp. 2d at 963-64 (applying Rule 9(b)'s heightened pleading standard for FAL claims for misleading, deceptive, and untrue advertising); *see also Vess*, 317 F.3d at 1103-04 (stating that, when a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim . . . the claim is said to be 'grounded in fraud' . . . and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)").

When UCL, CLRA, and FAL claims are premised on misleading advertising or labeling, Rule 9(b) requires the plaintiff to allege "the particular circumstances surrounding [the] representations" at issue. *Kearns*, 567 F.3d at 1126. This rule applies regardless of whether the statements at issue are misleading because they are affirmative misrepresentations or because they

14

contain material omissions. *See Williamson v. Reinalt-Thomas Corp.*, No. 5:11-CV-3548-LHK, 2012 WL 1438812, at *13 (citing *Kearns*, 567 F.3d at 1127, for proposition that "a claim based on a nondisclosure or omission is a claim for misrepresentation in a cause of action for fraud, and it must be pleaded with particularity under Rule 9(b)). In *Kearns*, for example, the district court dismissed UCL and CLRA claims for failure to comply with Rule 9(b)'s pleading standards. *Id.* at 1123-24. The Ninth Circuit affirmed the district court's dismissal under Rule 9(b). *Id.* at 1126. The Ninth Circuit explained:

> Nowhere in the [third amended complaint] does Kearns specify what the television advertisements or other sales material specifically stated. Nor did Kearns specify when he was exposed to them or which ones he found material. Kearns also failed to specify which sales material he relied upon in making his decision to buy a [certified pre-owned] vehicle. Kearns does allege that he was specifically told "[certified pre-owned] vehicles were the best used vehicles available as they were individually hand-picked and rigorously inspected used vehicles with a Ford-backed extended warranty." Kearns does not, however, specify who made this statement or when this statement was made. Kearns failed to articulate the who, what, when, where, and how of the misconduct alleged.

*Id.*

Similarly, this Court and other courts in this circuit have held that a plaintiff does not satisfy Rule 9(b) when the plaintiff generally identifies allegedly misleading statements but fails to specify which statements the plaintiff actually saw and relied upon. *See, e.g.*, *Pirozzi*, 913 F. Supp. 2d at 850 ("While Plaintiff identifies a number of representations made by Apple . . . she fails to provide the particulars of her own experience reviewing or relying upon any of those statements. Nowhere in the CAC does Plaintiff specify when she was exposed to the statements or which ones she found material to her decisions to purchase an Apple Device or App."); *Edmunson v. Procter & Gamble Co.*, No. 10-CV-2256-IEG, 2011 WL 1897625, at *5 (S.D. Cal. May 17, 2011) (holding that the plaintiff failed to satisfy Rule 9(b) when "[t]he complaint contain[ed] general allegations about Defendant's products and advertising scheme, but almost no allegations specific to Plaintiff").

In *Brazil*, this Court explained that the plaintiff "d[id] not clearly indicate the content of

15

the labels upon which [the plaintiff] allegedly relied when making his purchases or the advertisements and website statements that he saw and supposedly found misleading." 935 F. Supp. 2d at 964. Similarly, the plaintiff did "not allege that he personally saw and/or relied on any misleading advertisements or website statements in particular." *Id.* As a result, the Court found that Rule 9(b) was not satisfied. *Id.* at 965.

*Haskins v. Symantec Corp.*, No. 13-cv-1834-JST, 2013 WL 6234610 (N.D. Cal. Dec. 2, 2013), is even closer to the facts of the instant case. In *Haskins*, the plaintiff "provided specific statements on Symantec's website and in its advertisements" that the plaintiff alleged were misleading. *Id.* at *4. The plaintiff alleged that she was exposed to Symantec's claims on its website and that she purchased a Symantec product "for the reasons advertised." *Id.* The court noted that, unlike in *Kearns*, the plaintiff in *Haskins* had specified the content of the advertisements she alleged were misleading. *Id.* Even so, the court held that because the plaintiff had not identified what specific misrepresentations she saw and relied upon, the plaintiff had not satisfied Rule 9(b).

The court in *Haskins* also acknowledged that in *Tobacco II*, the California Supreme Court "held that, at least in some situations, plaintiffs can state a UCL claim for a fraudulent advertising campaign *without* demonstrating that they actually viewed any specific advertisement." *Id.* However, the court reasoned that the *Tobacco II* exception was narrow and applied long-term advertising campaigns—in the case of *Tobacco II*, for example, the campaign was decades long. *Id.* at *5. Because the plaintiff in *Haskins* had not shown a similar type of extensive advertising, the court concluded that she could not escape Rule 9(b)'s requirements by invoking the *Tobacco II* exception. *Id.*

After the plaintiff in *Haskins* amended her complaint, the court again dismissed for failure to satisfy Rule 9(b). The court concluded that conclusorily pleading that the plaintiff "'relied' on a very long list of representations, and that she was 'exposed to' those representations" was "insufficient to plead [] UCL and CLRA claim[s] grounded in fraud." 2014 WL 2450996, at *1

16

United States District Court
Northern District of California

(N.D. Cal. June 2, 2014). The Ninth Circuit affirmed. *Haskins v. Symantec Corp.*, 654 F. App'x 338 (9th Cir. 2016) (unpublished). Specifically, the Ninth Circuit held that "[b]ecause Haskins's complaint did not allege that she read and relied on a specific misrepresentation by Symantec, she failed to plead her fraud claims with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure." *Id.*

In the instant case, as discussed above, Plaintiffs identify a range of statements on Arris's website, on Amazon.com, and on the Modem's packaging that Plaintiffs allege are misleading. *See* CAC ¶¶ 47-50. Plaintiffs also generally allege that they relied on Arris's misrepresentations and omissions in purchasing the Modems. *Id.* ¶¶ 96, 161. However, Plaintiffs have not specified which statements any of them saw or relied on in deciding to buy the Modems. Because there are material differences between the representations on Arris's website, the representations on Amazon.com, and the representations on the Modem's packaging, the failure to specify the representations relied upon by the California Plaintiffs inhibits Arris's ability to "defend against the charge." *Semegen*, 780 F.2d at 731. Accordingly, pursuant to *Kearns* and *Haskins*, Plaintiffs have failed to satisfy Rule 9(b). To the extent that Plaintiffs attempt to invoke the *Tobacco II* exception, *see* Opp. at 7, this attempt fails because Plaintiffs have not established that Arris engaged in the sort of extensive advertising campaign at issue in *Tobacco II*. *See Haskins*, 654 F. App'x 338.

As a result, the Court GRANTS Arris's motion to dismiss the UCL, CLRA, and FAL claims. However, because Plaintiffs could allege additional facts to satisfy Rule 9(b), the Court grants Plaintiffs leave to amend.

## C. Unjust Enrichment/Quasi Contract

Arris argues that the unjust enrichment/quasi-contract cause of action should be dismissed with prejudice as to the California Plaintiffs because there is no cause of action for unjust enrichment under California law. Mot. at 13. Plaintiffs respond by citing *Astiana v. Hain Celestial Group*, 783 F.3d 753, 762 (9th Cir. 2015), in which the Ninth Circuit acknowledged that

unjust enrichment is not a standalone cause of action under California law but reversed the district court's dismissal of an unjust enrichment claim on that ground. Opp. at 9-10. The Ninth Circuit reasoned that courts should construe unjust enrichment claims as claims for quasi-contract seeking restitution. *Astiana*, 783 F.3d at 762 (citing *Rutherford Holdings, LLC v. Plaza Del Rey*, 166 Cal. Rptr. 3d 864, 872 (Ct. App. 2014)). Arris responds that the unjust enrichment/quasi-contract claim should be dismissed even in light of *Astiana* because the alleged fraud underlying the unjust enrichment/quasi-contract claim fails to satisfy Rule 9(b). Reply at 9.

Plaintiffs are correct that the Ninth Circuit "has construed the common law to allow an unjust enrichment cause of action through quasi-contract." *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016) (citing *Astiana*, 783 F.3d at 762). As a result, the Court rejects Arris's contention that there is no cause of action for unjust enrichment/quasi contract. However, because the unjust enrichment/quasi-contract claim is based on the same allegedly misleading advertisements upon which Plaintiffs' UCL, FAL, and CLRA claims are based, *see* CAC ¶¶ 445-47, the unjust enrichment/quasi-contract claim also sounds in fraud and is subject to Rule 9(b)'s heightened pleading requirements. *See Puri v. Khalsa*, 674 F. App'x 679, 690 (9th Cir. 2017) (unpublished) (applying Rule 9(b) to unjust enrichment claim based on fraud); *Vess*, 317 F.3d at 1103-04 (explaining that when claim is based on unified course of fraudulent conduct, Rule 9(b) applies, even when fraud is not a necessary element of the claim); *Maksoud v. Guelton*, No. 3:17-cv-362-H-WVG, 2017 WL 2505887, at *6 (S.D. Cal. June 9, 2017) (applying Rule 9(b) to unjust enrichment claim based on fraud). Accordingly, the unjust enrichment/quasi contract fails to satisfy Rule 9(b) for the same reasons that the UCL, FAL, and CLRA claims do, as explained above. As such, the unjust enrichment/quasi-contract claim is dismissed with leave to amend.

### D.  Motion to Strike

Finally, Arris moves to strike from the CAC references to anonymous forum user xymox1's commentary about the Modem's latency. Mot. at 10-13. As detailed in Section

II.D, *supra,* Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. Proc. 12(f). Matter is "immaterial" if it "has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir. 1993), *reversed on other grounds by Fogerty v. Fantasy, Inc.,* 510 U.S. 517 (1994). Matter is "impertinent" if it "consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.* "If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion." *Platte Anchor Bolt, Inc.,* 352 F. Supp. 2d at 1057. "Matter will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation; if there is any doubt as to whether under any contingency the matter may raise an issue, the motion may be denied . . . ." *Holmes v. Elec. Document Processing, Inc.,* 966 F. Supp. 2d 925, 938 (N.D. Cal. 2013) (quoting *Wailua Assocs. v. Aetna Casualty & Surety Co.*, 183 F.R.D. 550, 553-54 (D. Haw. 1998)). Rule 12(f) "is not a mechanism for challenging the factual accuracy of a complaint's allegations." *Patterson v. Two Fingers LLC*, No. CV-15-494-PHX-NVW, 2015 WL 2345658, at *3 (D. Ariz. May 15, 2015); *Mireskandari v. Daily Mail & General Trust PLC*, No. CV 12-2943 MMM, 2013 WL 12129642, at *3 (C.D. Cal. July 31, 2013) ("[C]hallenges to the truthfulness of portions of [a plaintiff's complaint] require the court to make factual determinations . . . and . . . are not appropriate under a Rule 12(f) motion to strike." (first alteration added) (quoting *Swain v. CACH, LLC*, 699 F. Supp. 2d 1117, 1124-25 (N.D. Cal. 2009)).

Specifically, Arris argues that Plaintiffs' use of xymox1's technical analysis of the Modem's latency is akin to offering an expert opinion without subjecting that opinion to Federal Rule of Evidence 702. Arris argues that any opinion on the functionality of the Modem and the Puma 6 Chipset should be dealt with by experts during expert discovery. Mot. at 12. As a result, Arris argues that xymox1's opinions are immaterial and impertinent for the purposes of Rule 12(f). Arris also stresses that xymox1's opinions contain inadmissible double hearsay. *Id.*

Finally, Arris contends that the failure to strike xymox1's opinions will needlessly complicate discovery. *Id.* The Court addresses these arguments in turn.

First, Arris does not cite any on-point authority for its argument that the Court must strike the references to xymox1's comments as a "pseudo-expert opinion." The Court in this order does not reach the issue of whether xymox1's comments constitute expert or quasi-expert opinions. However, to the extent that xymox1 could be construed as an expert offering an expert opinion (as opposed to a putative class member describing his or her experience with the Modem), other courts that have considered whether to strike purported expert opinions incorporated into or attached to a complaint have declined to do so at this stage in the proceedings. *See, e.g.*, *In re Resonant Inc. Sec. Litig.*, No. CV 15-1970 SJO, 2016 WL 6571267, at *5 (C.D. Cal. July 11, 2016) (refusing to strike references to expert opinion in complaint because "expert testimony is not barred from being plead[ed] directly into a complaint" (citing *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1233 (9th Cir. 2004)). In *Sanchez v. Bay Area Rapid Transit District*, No. 13-CV-1885 YGR, 2013 WL 4764485, at *9 (N.D. Cal. Sept. 5, 2013), another court in this district refused to strike a putative expert report attached to a complaint because it was not "'redundant, immaterial, impertinent, or scandalous,' as contemplated by Rule 12(f)." To the contrary, the court wrote that expert reports "are commonly attached to complaints." *Id.* The court "expresse[d] no opinion as to whether [the plaintiff's] materials would be ultimately admissible in evidence for purposes of trial, summary judgment, or other proceedings." *Id.*

Similarly, in *Pineida v. Lee*, No. 12-cv-1171-JST, 2014 WL 2927160, at *8 (N.D. Cal. June 26, 2014), a § 1983 deliberate indifference case, another court in this district refused to strike an expert report on the prison's ability to provide medical care to its inmates. Notably, the expert report in *Pineida* mentioned some of the defendants by name and directly commented on topics that were at issue in the case, including the prison's systemic problems in providing adequate healthcare. *Id.* Even though the defendants argued that the report was prejudicial, the court in

20

*Pineida* refused to strike the report because it was not redundant, immaterial, impertinent, or scandalous. *Id.*; *see also Pineida v. Lee*, No. 12-cv-1171-JST, 2015 WL 65309, at *5-6 (N.D. Cal. Jan. 5, 2015) (reaffirming denial of motion to strike).

Moreover, Arris's arguments based on Rule 702 and *Daubert* are misplaced at this stage of the proceedings. "The allegations in the complaint are not evidence, and need not meet any evidentiary standard." *Remington v. Mathson*, No. 17-cv-2007-JST, 2017 WL 2670747, at *6 (N.D. Cal. June 21, 2017); *see Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003) (noting that a plaintiff cannot defeat summary judgment with allegations in the complaint); *Briggs v. Blomkamp*, 70 F. Supp. 3d 1155, 1166 (N.D. Cal. 2014) ("[A]llegations in a complaint are not evidence that can be used to support or oppose summary judgment."). Indeed, Arris cites no authority that applies *Daubert* or Rule 702 at the pleading stage. As other courts have made clear, a refusal to strike references to an opinion does not mean that that opinion would ultimately be admitted as evidence. *See In re Resonant Inc. Sec. Litig.*, 2016 WL 6571267, at *5 (denying motion to strike "without prejudice to addressing the admissibility of the expert testimony in a *Daubert* motion filed before trial"); *Sanchez*, 2013 WL 4764485, at *9 (expressing no opinion on the admissibility of the expert opinion in question). Accordingly, the Court finds that the fact that xymox1 could be construed as an expert does not provide a basis for striking the opinion at this stage.

Second, the fact that xymox1 is not identified by name does not necessarily provide a basis for striking references to his or her comments in this context, where xymox1 is a putative class member. In *Belle v. Chrysler Group, LLC*, No. SACV 12-936 JVS, 2013 WL 949484, at *8-9 (C.D. Cal. Jan. 29, 2013), the defendant sought to strike portions of the complaint that "set[] forth verbatim reports presumably made by vehicle owners to [the National Highway Traffic Safety Administration] and to unidentified consumer websites." *Id.* at *8. In denying the motion to strike the comments as immaterial and impertinent, the court reasoned that the relevant portions of the complaint "merely report verbatim the perceptions other drivers, self-reporting and anonymous

United States District Court
Northern District of California

though they may be, who experienced problems with the Class Vehicles similar to those experienced by Plaintiffs here." *Id.* at \*9. Similarly, in *Michael v. Honest Co., Inc.*, No. LA CV15-7059 JAK, 2016 WL 8902574, at \*30 (C.D. Cal. Dec. 6, 2016), the court denied a motion to strike anonymous complaints on the internet about the efficacy of the product at issue. The court reasoned that the topic of the challenged statements was not immaterial because the complaint contained allegations about injury resulting from the same product. The court stated, "The allegations at issue concern other consumers, who may be putative class members, who supposedly had similar experiences." *Id.*

Here, like in *Belle* and *Michael*, xymox1 is a putative class member and the articles at issue pertain to xymox1's experience with the Modem. Specifically, the challenged portions of the CAC contain information from xymox1 purporting to demonstrate that the Modem suffers from significant latency spikes. Such information clearly pertains to Plaintiffs' claims, which are premised on the allegation that the Modems are defective due to high latency—and thus that Arris's advertising was misleading. Indeed, Arris concedes in its motion to strike that "[c]entral to each of Plaintiffs' twenty-three causes of action is the allegation that the Modem 'contains a serious defect' and 'suffers from high spikes in network latency.' CAC ¶ 2." Mot. at 11. Arris cannot contend that information related to the alleged defect is immaterial to Plaintiffs' claims when Arris itself acknowledges the centrality of the defect to all of Plaintiffs' claims. *Id.* As such, Arris has not shown that the xymox1 material is immaterial or impertinent.

Third, to the extent that Arris challenges the xymox1 material as unreliable double hearsay, as noted above, "[t]he allegations in the complaint are not evidence, and need not meet any evidentiary standard." *Remington*, 2017 WL 2670747 at \*6. As a result, Arris's argument that the xymox1 references contain double hearsay is not relevant at this stage in the proceedings. *See Belle*, 2013 WL 949484 at \*9 ("That an allegation is hearsay is not a basis for striking pursuant to Rule 12(f). Allegations need not themselves be admissible evidence.").

Accordingly, because Arris has not shown that the xymox1 material is redundant,

United States District Court
Northern District of California

immaterial, impertinent, or scandalous, the motion to strike is denied.

## IV.      CONCLUSION

For the foregoing reasons, Arris's motion to dismiss the UCL, FAL, CLRA, and unjust enrichment/quasi-contract claims is GRANTED with leave to amend. Arris's motion to strike is DENIED. If Plaintiffs fail to file an amended complaint within 30 days or fail to cure the deficiencies identified in this order, the claims dismissed in this order will be dismissed with prejudice. Plaintiffs may not add new causes of action or new parties without a stipulation or leave of the Court.

**IT IS SO ORDERED.**

Dated: January 4, 2018

_____
LUCY H. KOH
United States District Judge

Case No. 17-CV-01834-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND AND DENYING MOTION TO STRIKE