KILPATRICK TOWNSEND & STOCKTON LLP
NANCY L. STAGG (CA State Bar No. 157034)
nstagg@kilpatricktownsend.com
12730 High Bluff Drive, Suite 400
San Diego, CA 92130
Telephone: (858) 350-6156
Facsimile: (858) 350-6111

JOE P. REYNOLDS (admitted *Pro Hac Vice*)
jreynolds@kilpatricktownsend.com
1100 Peachtree Street, NE, Suite 1100
Atlanta, GA 30309-4528
Telephone: (404) 815-5912
Facsimile: (404) 541-4618

Attorneys for Defendant
ARRIS International plc

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE ARRIS CABLE MODEM CONSUMER LITIGATION<br><br>This Document Relates to: All Actions | Civil Action No. 5:17-cv-01834-LHK<br><br>**DECLARATION OF NANCY L. STAGG IN SUPPORT OF PLAINTIFFS' ADMINISTRATIVE MOTION TO FILE PORTIONS OF PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT UNDER SEAL [DKT. 59]** |

I, Nancy L. Stagg, hereby declare as follows:

1. I am a partner in the law firm of Kilpatrick Townsend & Stockton LLP, counsel of record for Defendant ARRIS International plc ("ARRIS" or "Defendant") in this matter. I am admitted to practice before this Court and in all the Courts of the State of California. If called upon to testify to the facts stated in this declaration, I would do so truthfully, competently, and of my own personal knowledge except where otherwise noted. I make this declaration in Support of

Plaintiffs' Administrative Motion to File Portions of Plaintiffs' Second Amended Consolidated Class Action Complaint Under Seal ("Motion") filed on 2/5/18 at ECF No. 59.

2. **Legal Standard For Sealing Judicial Records.** "Unless a particular court record is one 'traditionally kept secret,'" a "strong presumption in favor of access" to judicial records "is the starting point." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). The party seeking to seal a judicial record must meet the "compelling reasons" standard to overcome this strong presumption. *Id.* at 1179 (citing *Foltz*, 331 F.3d at 1135). *See also*, *Ctr. For Auto Safety v. Chrysler Grp.*, 809 F.3d 1092, 1099 (9th Cir. 2016). A request to seal all or part of a complaint must also meet the "compelling reasons" standard, rather than the lower "good cause" standard applicable to nondispositive motions. *In re NVIDIA Corp. Derivative Litig*, 2008 WL 1859067, at *3 (N.D. Cal. 2008). This standard is invoked even if the "attachments, were previously filed under seal or protective order." *Kamakana*, 447 F.3d at 1179 (citing *Foltz*, 331 F.3d at 1136). Compelling reasons for sealing court files generally exist when such "'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). However, "[t]he mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana*, 447 F.3d at 1179. Pursuant to Rule 26(c), a trial court has broad discretion to permit sealing of court documents for, inter alia, the protection of "a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 26(c)(1)(G). The Ninth Circuit has adopted the definition of "trade secrets" set forth in the Restatement of Torts, holding that "[a] trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Clark v. Bunker*, 453 F.2d 1006, 1009 (9th Cir. 1972) (quoting Restatement (First) of Torts § 757 cmt. b). In this District, parties seeking to seal judicial records must furthermore follow Civil Local Rule 79-5, which requires, inter alia, that a sealing request be "narrowly tailored to seek sealing only of

sealable material." Civil L.R. 79-5(b) (emphasis added). Where the submitting party seeks to file under seal a document designated confidential by another party, the burden of articulating compelling reasons for sealing is placed on the designating party. *Id.* 79-5(e).

3. **Existing Protective Orders and the Designating Parties.** As noted in Plaintiffs' Motion, Plaintiffs and ARRIS previously entered into a Stipulated Protective Order for Standard Litigation at ECF No. 28 and a Supplemental Stipulated Protective Order Regarding [non-party] Intel Corporation ("Intel") at ECF No. 37 (collectively "Protective Orders"). The Protective Orders govern the Parties' handling and use of each other's and non-party Intel's documents and other information produced in discovery in this Action. In each instance noted below in the chart, either ARRIS or Intel was the "Designating Party" of the information sought to be sealed for purposes of Civil Local Rule 79-5.

4. **Basis for Sealing Portions of the Complaint.** I have reviewed Plaintiffs' Second Amended Consolidated Class Action Complaint ("SAC"), the portions proposed to be sealed and the source documents from which the portions of the SAC proposed to be sealed originate. In addition, I have reviewed certain written agreements between ARRIS and Intel which obligate ARRIS to maintain confidentiality regarding Intel's intellectual property, trade secrets, including technology and related methods and processes, including, as is relevant to this action, testing methods and processes. As outside counsel for ARRIS in this Action, I am also aware of ARRIS's policies and procedures for the confidential handling of its own intellectual property, and trade secrets, including technology and related methods and processes, including testing methods and processes, as well as the handling of confidential information received from cable system operators that ARRIS does business with and relies upon for system certification and provisioning of the firmware in the cable modems. In addition, I have also reviewed ARRIS's privacy policies as they relate to protecting consumer communications to ARRIS.

5. **Intel Declaration Supporting Sealing**. Attached to this Declaration as Exhibit A is a true and correct copy of the Declaration of Intel employee Keith Wehmeyer on behalf of Designating Party, non-party Intel stating Intel's separate and additional basis for sealing portions of the SAC.

DECLARATION OF NANCY L. STAGG ISO PLAINTIFF'S ADMIN. MOTION TO SEAL SECOND
AMENDED CONSOLIDATED CLASS ACTION COMPLAINT - 3 -
CASE NO. 5:17-CV-01834-LHK

6. **Factual and Legal Basis For Sealing**. The attached chart states the factual and legal basis by which ARRIS and Intel seek to have such portions of the SAC sealed:

| Page | Line(s) | Factual and Legal Basis for Sealing |
|---|---|---|
| 1 | 12 | While ARRIS does not agree that the statement is accurate, ARRIS does not seek to seal this reference to testing. |
| 15 | 18-19 | While ARRIS does not agree that this statement is accurate, ARRIS does not seek to seal this argumentative allegation. |
| 16 | 1-9, 11-12, 17-19, 25 | While ARRIS does not agree that this statement is accurate, ARRIS does not seek to to have lls. 17-19 sealed. However, lls. 1-9, 11-12 should be sealed because they reference communications within ARRIS and between ARRIS and Intel (the chip supplier for the SB6190 device at issue) regarding certain functions and test results of the Intel Puma 6 chip. Disclosure of this information to the general public would harm both Intel and ARRIS because it would allow their competitors to have information about the design of the chip that is not known to the general public and which both Intel and ARRIS treat as confidential and proprietary to Intel. Line 25 quotes direct consumer communications to ARRIS that ARRIS records in its customer service records and maintains as confidential. Publishing such direct comments when the consumer had a reasonable expectation of privacy under ARRIS existing privacy policies when communicating to ARRIS could erode trust and harm ARRIS in the consumer market. |
| 17 | 1-6, 8-15, 17-28 | Lines 1-3 continue the direct consumer communication referenced above on p. 16, l. 25 and should be sealed for the same reason: it quotes from direct consumer communications that ARRIS maintains as confidential under existing published privacy policies and which consumers expect to be confidential. Lines 4-6 do not need to be sealed. Lines 8-15, 17-21, 28 (fn.3) reference ARRIS internal processes and systems, testing and |

| Page | Line(s) | Factual and Legal Basis for Sealing |
|---|---|---|
| | | certain engineering structure (including internal codes and references) which are not known to the general public and which if known to competitors or suppliers could cause competitive disadvantage and harm to ARRIS. Lines 22-27 reference communications with a cable operator which are generally maintained as confidential pursuant to ARRIS and the cable operators' policies and procedures. Release of such communications without the non-party cable operators' authorization would chill and potentially harm their existing working relationships, which would harm ARRIS and cause a competitive disadvantage with its competitors who have similar relationships. |
| 18 | 1-2, 4-6, 8-10, 12-14 | Lines 1-2, 4-6, 8-10, 12-14 reference ARRIS internal processes and systems, testing and certain engineering structure (including internal codes and references) which are not known to the general public and which if known to competitors or suppliers could cause competitive disadvantage and harm to ARRIS. Because these reference issues related to the Intel Puma 6 chip, for the same reasons, as noted in the Wehmeyer Decl., this information is also confidential and proprietary to Intel. |
| 19 | 5-11, 13-18, 20-25 | These lines reference ARRIS and a certain cable operator's internal processes and systems, testing and certain engineering structure (including internal codes and references) which are not known to the general public and which if known to competitors or suppliers could cause competitive disadvantage and harm to ARRIS. These lines also reference communications with a cable operator which are generally maintained as confidential pursuant to ARRIS and the cable operators' policies and procedures. Release of such communications without the non-party cable operators' authorization would chill and potentially harm their existing working relationships, which would harm ARRIS and cause a competitive disadvantage with its competitors who have similar relationships. Additionally, |

| Page | Line(s) | Factual and Legal Basis for Sealing |
|---|---|---|
| | | information referenced in these portions could reveal information which could be used for malicious purposes and pose a security threat. |
| 21 | 9-21 | These lines reference ARRIS and Intel's internal processes and systems, testing and design which are not known to the general public and which if known to competitors or other suppliers could cause competitive disadvantage and harm to ARRIS and Intel. Because these lines reference issues related to the Intel Puma 6 chip, for the same reasons, as noted in the Wehmeyer Decl., this information is confidential and proprietary to Intel. Additionally, information referenced in these portions could reveal information which could be used for malicious purposes and pose a security threat. |
| 22 | 1-5 | These lines reference ARRIS and Intel's internal processes and systems, testing and design which are not known to the general public and which if known to competitors or other suppliers could cause competitive disadvantage and harm to ARRIS and Intel. Because these lines reference issues related to the Intel Puma 6 chip, for the same reasons, as noted in the Wehmeyer Decl., this information is confidential and proprietary to Intel. Additionally, information referenced in these portions could reveal information which could be used for malicious purposes and pose a security threat. |
| 26 | 18-24 | These lines reference ARRIS and Intel's internal processes and systems, testing and design which are not known to the general public and which if known to competitors or other suppliers could cause competitive disadvantage and harm to ARRIS and Intel. Because these lines reference issues related to the Intel Puma 6 chip, for the same reasons, as noted in the Wehmeyer Decl., this information is confidential and proprietary to Intel. Additionally, information referenced in these portions could reveal information which could be used for malicious purposes and pose a |

| Page | Line(s) | Factual and Legal Basis for Sealing |
|---|---|---|
| | | security threat. |
| 27 | 1-26 | These lines reference ARRIS internal processes and systems, testing and design which are not known to the general public and which if known to competitors or other suppliers could cause competitive disadvantage and harm to ARRIS. Because these lines reference issues related to the Intel Puma 6 chip, for the same reasons, as noted in the Wehmeyer Decl., this information is confidential and proprietary to Intel. Additionally, information referenced in these portions could reveal information which could be used for malicious purposes and pose a security threat. |
| 28 | 1-28 | These lines reference ARRIS internal processes and systems, testing and design which are not known to the general public and which if known to competitors or other suppliers could cause competitive disadvantage and harm to ARRIS and Intel. Because these lines reference issues related to the Intel Puma 6 chip, for the same reasons, as noted in the Wehmeyer Decl., this information is confidential and proprietary to Intel. Additionally, information referenced in these portions could reveal information which could be used for malicious purposes and pose a security threat. |
| 29 | 1-21 | These lines reference ARRIS's internal processes and systems, testing and design which are not known to the general public and which if known to competitors or other suppliers could cause competitive disadvantage and harm to ARRIS and Intel. Because these lines reference issues related to the Intel Puma 6 chip, for the same reasons, as noted in the Wehmeyer Decl., this information is confidential and proprietary to Intel. Additionally, information referenced in these portions could reveal information which could be used for malicious purposes and pose a security threat. |
| 30 | 1-25 | These lines reference ARRIS's internal processes and systems, testing and design which are not known to the general public |

| Page | Line(s) | Factual and Legal Basis for Sealing |
|---|---|---|
| | | and which if known to competitors or other suppliers could cause competitive disadvantage and harm to ARRIS and Intel. Because these lines reference issues related to the Intel Puma 6 chip, for the same reasons, as noted in the Wehmeyer Decl., this information is confidential and proprietary to Intel. Additionally, information referenced in these portions could reveal information which could be used for malicious purposes and pose a security threat. |
| 31 | 2-3, 5-14, 16-28 | These lines reference ARRIS's internal processes and systems, testing and design which are not known to the general public and which if known to competitors or other suppliers could cause competitive disadvantage and harm to ARRIS and Intel. Because these lines reference issues related to the Intel Puma 6 chip, for the same reasons, as noted in the Wehmeyer Decl., this information is confidential and proprietary to Intel. Additionally, information referenced in these portions could reveal information which could be used for malicious purposes and pose a security threat. |
| 32 | 2-7, 10-25, 27 | These lines reference ARRIS and Intel's internal processes and systems, testing and design which are not known to the general public and which if known to competitors or other suppliers could cause competitive disadvantage and harm to ARRIS and Intel. Because these lines reference issues related to the Intel Puma 6 chip, for the same reasons, as noted in the Wehmeyer Decl., this information is confidential and proprietary to Intel. Additionally, information referenced in these portions could reveal information which could be used for malicious purposes and pose a security threat. |
| 33 | 1-16, 18-27 | These lines reference ARRIS and Intel's internal processes and systems, testing and design which are not known to the general public and which if known to competitors or other suppliers could cause competitive disadvantage and harm to ARRIS and Intel. Because these lines reference issues related |

| Page | Line(s) | Factual and Legal Basis for Sealing |
|------|---------|-------------------------------------|
|      |         | to the Intel Puma 6 chip, for the same reasons, as noted in the Wehmeyer Decl., this information is confidential and proprietary to Intel. Additionally, information referenced in these portions could reveal information which could be used for malicious purposes and pose a security threat. |
| 34   | 6, 8-25 | These lines reference Intel's internal processes and systems, testing and design which are not known to the general public and which if known to competitors or other suppliers could cause competitive disadvantage and harm to both ARRIS and Intel. Because these lines reference issues related to the Intel Puma 6 chip, for the same reasons, as noted in the Wehmeyer Decl., this information is confidential and proprietary to Intel. Additionally, information referenced in these portions could reveal information which could be used for malicious purposes and pose a security threat. |
| 35   | 1-19    | These lines reference Intel's internal processes and systems, testing and design which are not known to the general public and which if known to competitors or other suppliers could cause competitive disadvantage and harm to both ARRIS and Intel. Because these lines reference issues related to the Intel Puma 6 chip, for the same reasons, as noted in the Wehmeyer Decl., this information is confidential and proprietary to Intel. Additionally, information referenced in these portions could reveal information which could be used for malicious purposes and pose a security threat. |
| 36   | 5-24    | These lines reference Intel's internal processes and systems, testing and design which are not known to the general public and which if known to competitors or other suppliers could cause competitive disadvantage and harm to both ARRIS and Intel. Because these lines reference issues related to the Intel Puma 6 chip, for the same reasons, as noted in the Wehmeyer Decl., this information is confidential and proprietary to Intel. Additionally, information referenced |

| Page | Line(s) | Factual and Legal Basis for Sealing |
|---|---|---|
| | | in these portions could reveal information which could be used for malicious purposes and pose a security threat. |
| 37 | 3-7, 22-25, 27-28 | These lines reference ARRIS and Intel's internal processes and systems, testing and design which are not known to the general public and which if known to competitors or other suppliers could cause competitive disadvantage and harm to ARRIS and Intel. Because these lines reference issues related to the Intel Puma 6 chip, for the same reasons, as noted in the Wehmeyer Decl., this information is confidential and proprietary to Intel. Additionally, information referenced in these portions could reveal information which could be used for malicious purposes and pose a security threat. |
| 38 | 1-12, 14-18 | These lines reference ARRIS and Intel's internal processes and systems, testing and design which are not known to the general public and which if known to competitors or other suppliers could cause competitive disadvantage and harm to ARRIS and Intel. Because these lines reference issues related to the Intel Puma 6 chip, for the same reasons, as noted in the Wehmeyer Decl., this information is confidential and proprietary to Intel. Additionally, information referenced in these portions could reveal information which could be used for malicious purposes and pose a security threat. |
| 39 | 7-8, 12-14, 16-28 | These lines reference ARRIS and a cable operator's systems, analysis, internal network management and design which are not known to the general public and which if known to the general public or competitors could cause competitive disadvantage and harm to ARRIS and the cable operator. |
| 40 | 1-3, 5-12, 14-16 | These lines reference ARRIS and a cable operator's systems, analysis, internal network management and design which are not known to the general public and which if known to the general public or competitors could cause competitive disadvantage and |

| Page | Line(s) | **Factual and Legal Basis for Sealing** |
|---|---|---|
| | | harm to ARRIS and the cable operator. |

7. **Narrowly Tailored**. As can be seen by the chart above, the portions sought to be sealed have been selected to ensure that the proposed sealing is narrowly tailored to seal only the sealable material and not more. The majority of the 103 page Complaint is not sealed and the general public has access to a redacted copy of the Complaint.

I declare under penalty of perjury under the laws of the United States of America that the foregoing facts are true and correct. Executed on February 9, 2018, at San Diego, California.

*/s/ Nancy L. Stagg*
Nancy L. Stagg